Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRUCE T.,

                    **Plaintiff,**

                    v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                    **Defendant.**

Civil Action No. 21-20289

**OPINION**

PADIN, DISTRICT JUDGE

Plaintiff Bruce T. appeals the decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.  See* D.E. 1.  For the reasons discussed below, the Court **VACATES** and **REMANDS** the decision of the Commissioner.

## I.      BACKGROUND

On August 29, 2018, Plaintiff filed an application for SSI.  D.E. 6, Administrative Record ("R.") at 85.  Plaintiff's application was denied initially on March 12, 2019, and again, after reconsideration, on November 26, 2019.  *Id.* at 101-105, 116-117.  On December 11, 2020, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified.  *Id.* at 41-70.

On February 10, 2021, the ALJ denied Plaintiff's SSI application.  *Id.* at 18-40.  The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment that would automatically render him disabled.  *Id.* at 24.  The ALJ further ruled that Plaintiff had the residual functional capacity to work in several jobs that exist in significant numbers in the national economy.  *Id.* at 34.

The Appeals Council denied Plaintiff's request for review on September 30, 2021. *Id.* at 1-7. Plaintiff then filed the instant appeal, over which the Court has subject-matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner opposes. D.E. 12.

## II.    LEGAL STANDARDS

### A.    "Disability" Under the Act

To receive SSI, a claimant must show that he is "disabled" within the meaning of the Act. 42 U.S.C. § 1382(a). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### B.    The Commissioner's Five- Step Disability Analysis

In evaluating whether a claimant is disabled as defined in the Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his residual functional capacity ("RFC"); and (5) whether the claimant is able

to do any other work that exists in significant numbers in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a).

In the first four steps, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. *See Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). In the fifth and final step, the Commissioner bears the burden of proving that work is available for the plaintiff. *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983). Stated somewhat differently, the claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

In addition, between steps three and four, the ALJ must assess a claimant's RFC, which is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Once the ALJ has made this determination, this Court's review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002).

## C.    The Commissioner's Assessment of Medical Opinions

Plaintiff filed for disability following a paradigm shift in the manner in which medical

opinions are evaluated when assessing Social Security claims.  Prior to March 2017, ALJs were

required to follow regulations that defined medical opinions narrowly and created a hierarchy of

medical source opinions with treating sources at the apex of this hierarchy.  However, in March of

2017, the Commissioner's regulations governing medical opinions changed in a number of ways.

The range of opinions that ALJs were instructed to consider were broadened substantially, and the

approach to evaluating opinions was changed from a hierarchical form of review to a more holistic

analysis.  As aptly explained by one court:

> The regulations regarding the evaluation of medical evidence have
> been amended for claims filed after March 27, 2017, and several of
> the prior Social Security Rulings, including SSR 96-2p, have been
> rescinded.  According to the new regulations, the Commissioner
> "will no longer give any specific evidentiary weight to medical
> opinions; this includes giving controlling weight to any medical
> opinion."  Revisions to Rules Regarding the Evaluation of Medical
> Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg.
> 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a),
> 416.920c(a).  Instead, the Commissioner must consider all medical
> opinions and "evaluate their persuasiveness" based on the following
> five factors: supportability; consistency; relationship with the
> claimant; specialization; and "other factors."  20 C.F.R. §§
> 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and
> assigning "weight" to a medical opinion, the ALJ must still
> "articulate how [he or she] considered the medical opinions" and
> "how persuasive [he or she] find[s] all of the medical opinions."  *Id.*
> at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two
> "most important factors for determining the persuasiveness of
> medical opinions are consistency and supportability," which are the
> "same factors" that formed the foundation of the treating source
> rule.  Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she]
> considered the supportability and consistency factors" for a medical

> opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).   With
> respect to "supportability," the new regulations provide that "[t]he
> more relevant the objective medical evidence and supporting
> explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the
> more persuasive the medical opinions or prior administrative
> medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1),
> 416.920c(c)(1).    The regulations provide that with respect to
> "consistency," "[t]he more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not
> explicitly discuss, the three remaining factors in determining the
> persuasiveness of a medical source's opinion.    *Id.* at §§
> 404.1520c(b)(2), 416.920c(b)(2).

*Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y.

Oct. 1, 2020); *accord Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *7-8 (M.D. Pa.

May 19, 2021).

**D.     Standards of Judicial Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's

decision to deny a claimant's application for social security benefits. *Ventura v. Shalala*, 55 F.3d

900, 901 (3d Cir. 1995).   A reviewing court must uphold the Commissioner's factual decisions

where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Fargnoli v.*

*Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000);

*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).   Substantial evidence means more than

"a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   It means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.*   The inquiry is not whether the reviewing

court would have made the same determination, but whether the Commissioner's conclusion was

reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willbanks v. Secretary of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. *Id.* (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, *Fargnoli*, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. *Sykes*, 228 F.3d at 262; *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Curtin v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981).

## III.    THE ALJ's DECISION

### A.    The ALJ's Five-Step Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 29, 2018, the date of his application. R. at 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: fracture of the right ankle (status post); fracture of the right hand (status post), MRSA infection of the left knee (status post); schizoaffective disorder (bipolar type); bipolar disorder; conduct disorder; post-traumatic stress disorder ("PTSD"); and substance abuse. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a listed impairment that would render him disabled as a matter of law. *Id.*

The ALJ then formulated Plaintiff's RFC, finding that he:

> has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he can never climb ropes, ladders or scaffolds. He can never be exposed to unprotected heights or hazardous machinery. He can occasionally climb stairs and ramps but never crawl. He can occasionally kneel and frequently balance. He can frequent fingering and handling. He can have occasional contact with supervisors and co-workers but have no more than incidental contact with the public. His work must be performed in an environment free of fast-paced production requirements where productivity is measured at the end of the day and with only occasional changes to essential job functions. He is able to do only simple and routine tasks.

*Id.* at 27.

At step four, the ALJ found that Plaintiff had no past relevant work experience. *Id.* at 33.

Finally, at step five, the ALJ found that with Plaintiff's RFC, he could perform the following jobs that exist in significant numbers in the national economy: garment sorter (45,000 jobs); laundry worker (220,000 jobs); and mail sorter (96,000 jobs). *Id.* at 34. The ALJ cited to the vocational expert's testimony in support of this finding. *Id.*

**B.      The Medical Opinion Evidence Before the ALJ**

In his opinion, the ALJ discussed the medical opinion evidence he considered and purportedly relied on to formulate Plaintiff's RFC and ultimately conclude that Plaintiff was not disabled. *Id.* at 32-33. Notably, the ALJ's finding of "not disabled" contradicts the findings of the medical professionals who personally evaluated Plaintiff; three of those professionals, Advanced Practitioner Nurse Diane DeCarolis, Dr. James K. Ellis, and Dr. Julia Lynford expressly concluded that Plaintiff's mental impairments rendered him disabled for purposes of obtaining SSI; the fourth, Edward J. Linehan, diagnosed Plaintiff with significant mental impairments that would continue for the next twelve months, but did not render any formal opinion on whether Plaintiff was ultimately disabled.[1]

In her April 17, 2020 report, Nurse DeCarolis, who treated Plaintiff on a monthly basis beginning in May 2018, noted that Plaintiff suffers from paranoid delusions, aggression and irritability, difficulty in concentration and memory, and illogical thinking. *Id.* at 505, 507. She also noted that Plaintiff "becomes anxious [and] paranoid in high stress situations." *Id.* at 507.

---

[1] A fifth medical professional, Dr. Mirseyed Mohit, performed an in-person evaluation of Plaintiff on February 27, 2019. R. 438. Dr. Mohit, however, only evaluated Plaintiff's physical limitations. R. 440.

Nurse DeCarolis opined that Plaintiff would be absent from work more than three times per month due to his impairments. *Id.* at 509. The ALJ discounted this opinion as unpersuasive "because it is not supported by the objective evidence and is not consistent with the other evidence of record." *Id.* at 32.

Dr. Ellis performed a one-time evaluation of Plaintiff on October 20, 2020. *Id.* at 566. He diagnosed Plaintiff with schizoaffective disorder, PTSD, and conduct disorder. *Id.* at 564. Dr. Ellis noted that Plaintiff was particularly prone to, *inter alia*, auditory hallucinations, paranoia, mood dysregulation, impulsivity, hostility, and violence. *Id.* at 568. He also opined that Plaintiff would be required to be absent from work more than three times per month because of his symptoms and functional limitations. *Id.* at 570. The ALJ discounted Dr. Ellis's opinion as unpersuasive "because his opinion is not supported by the objective evidence and is not consistent with the other evidence of record." *Id.* at 32.

In her November 3, 2020 report, Dr. Lynford opined that Plaintiff "is totally disabled without consideration of any past or present drug and/or alcohol use." *Id.* at 552. She stated that Plaintiff's past alcohol and current marijuana are used to manage his PTSD and schizoaffective disorder symptoms, which include hallucinations, sleep disturbances, irritability, and mood lability. *Id.* Dr. Lynford further opined that Plaintiff's symptoms would persist even if he ceased his substance abuse. *Id.* The ALJ discounted this opinion as "unpersuasive because it is inconsistent with the other evidence of record, confirming the claimant's mental symptoms are manageable with treatment psychotherapy and psychotropic medication." *Id.* at 32.

Dr. Linehan evaluated Plaintiff on January 23, 2019 "to assist in determining [his] eligibility for Social Security benefits." *Id.* at 433. Dr. Linehan, as correctly noted by the ALJ, "diagnosed [Plaintiff] with bipolar mood disorder, paranoia, panic disorder without agoraphobia

and learning disorder, not otherwise specified, leading to intellectually disabled functioning, special education, the need for psychiatric treatment and medication and joblessness." *Id.* at 32. Dr. Linehan, however, declined to render an ultimate opinion on whether Plaintiff was disabled. *See id.* at 435 ("All funds, should he be awarded them, should be handled by a responsible adult in his life."). The ALJ found Dr. Linehan's opinion to be only partially persuasive "because the doctor failed to provide an opinion regarding [Plaintiff's] vocational abilities." *Id.* at 32.

The only two individuals who opined that Plaintiff was not disabled based on his well-documented history of mental illness were two State agency medical consultants, Dr. Leslie Williams and Dr. Sharon Ames-Dennard, who each arrived at this conclusion based on their review of Plaintiff's medical records only. *Id.* at 71-84, 86-99. Notably, the ALJ found these opinions to be only partially persuasive because these consultants "did not have the benefit of the latest medical evidence nor the benefit of observing [Plaintiff] personally, and they did not incorporate the entirety of [Plaintiff's] limitations." *Id.* at 33.

## IV.   DISCUSSION

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions before him. The Court agrees. As noted, an ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the current regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, each of the four medical professionals who personally observed Plaintiff concluded that he suffers from severe mental impairments. Their opinions are consistent on this point and are well-supported by the evidence of record. Moreover, three of those professionals, Dr. Ellis, Dr. Lynford, and Nurse DeCarolis, expressly concluded that Plaintiff's mental impairments rendered him unable to work. The ALJ nonetheless discounted all three of these opinions as "not persuasive." The Court finds that his reasons for doing so are not adequately explained, particularly with respect to Nurse DeCarolis and Dr. Ellis. The Commissioner, moreover, appears to agree. *See* D.E. 12 at 12 ("the ALJ did not flesh out the evidence showing the lack of support/consistency in the paragraph analyzing the respective opinions of Dr. Ellis and NP DeCarolis.").

Again, the ALJ's limited explanation in support of his rejection of the findings of Nurse DeCarolis, who was the only medical professional to engage in prolonged treatment and observation of Plaintiff, was that her opinion was "not supported by the objective evidence and is not consistent with the other evidence of record." It is accordingly unclear to this Court why the ALJ summarily discounted Nurse DeCarolis's opinion. What is clear is that Nurse DeCarolis "had a uniquely valuable longitudinal perspective on [Plaintiff's] mental state [that] the ALJ failed to acknowledge in [his] analysis." *Kenyon*, 2021 WL 2015067, at *9. The ALJ's summary discounting of Dr. Ellis's opinion as "not supported by the objective evidence and [in]consistent with the other evidence of record" is equally problematic. *See Bowers v. Saul*, No. CV 19-17386, 2020 WL 4435405, at *8 (D.N.J. Aug. 3, 2020) ("While the ALJ retains the discretion to ultimately

determine the weight placed on a physician's opinion, the ALJ must provide an adequate explanation" when assigning weight); *Moore v. Comm'r of Soc. Sec.*, Civ. No. 11-3611, 2012 WL 2958243, at *2 (D.N.J. July 19, 2012) (In assigning weight to medical evidence, "[t]he ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review.") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000)).

Furthermore, it is unclear what competent medical evidence the ALJ relied on in support of his finding that Plaintiff was not disabled. As noted, the ALJ found the opinion of Dr. Linehan, who "diagnosed [Plaintiff] with bipolar mood disorder, paranoia, panic disorder without agoraphobia and learning disorder, not otherwise specified, leading to intellectually disabled functioning, special education, the need for psychiatric treatment and medication and joblessness," to be only partially persuasive "because the doctor failed to provide an opinion regarding [Plaintiff's] vocational abilities." R. at 32. The ALJ likewise found the opinions of the two non-treating State agency consultants, who, again, were the only individuals who concluded that Plaintiff's mental health impairments did not render him disabled, to be only "partially persuasive." The ALJ, to be clear, did not find any third-party's opinion to be fully "persuasive."

Instead, it appears that the ALJ concluded that Plaintiff was not disabled in the absence of any persuasive medical opinion that supported that finding, and in spite of the consistent observations and conclusions of the mental health professionals who personally observed and treated Plaintiff's severe mental impairments. This is also problematic. *See Kenyon*, 2021 WL 2015067, at *10 ("[E]ven under the new regulations governing evaluation of medical opinion evidence, more is needed by way of explanation before an ALJ can reject all medical opinions in favor of her own subjective evaluation of the treatment records"); *Beerhalter v. Comm'r of Soc. Sec.*, No. CV 19-17561 (RBK), 2020 WL 5627015, at *9 (D.N.J. Aug. 18, 2020) (Remanding

matter where the ALJ's "findings regarding Plaintiff's mental health [were] not supported by substantial evidence."); *accord Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013) ("Because they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician."); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

The Court, in concluding that remand is warranted, finds the decision in the factually similar case, *Kenyon v. Saul*, Civil No. 1:20-CV-1372, 2021 WL 2015067 (M.D. Pa. May 19, 2021), to be particularly instructive. The Court now quotes from two portions of that opinion[2] which succinctly explain why it is directing remand in the present matter:

> [G]iven that "supportability . . . and consistency . . . are the most important factors [to] consider when [] determin[ing] how persuasive [to] find a medical source's medical opinions . . . to be," 20 C.F.R. § 404.1520c(b)(2), [this Court] find[s] that the ALJ's evaluation of these treating source opinions failed to adequately address a critical factor: taken together, the opinions of [Dr. Ellis, Dr. Lynford, and Nurse DeCarolis] are remarkably consistent in their evaluation of [Plaintiff's] mental state and ability to work . . . . From three different treatment perspectives, each of these sources reached consistent conclusions regarding the degree of [Plaintiff's] impairment, the extent to which he would be off-task, and the degree to which his impairments would result in chronic absenteeism from work. Given that consistency of opinions is one of the most important factors to assess in this medical opinion analysis, the ALJ's failure to address, or even acknowledge in a meaningful way, these remarkably consistent opinions requires a remand when all of the consistent treating opinions are rejected in favor of the ALJ's own *ad hoc* and medically unsupported RFC determination.

*Id.* at *9.

---

[2] These quotes have been marginally modified to reflect the specific facts in the present matter.

In sum, like *Kenyon*,

> In fashioning an RFC for the plaintiff and denying this disability claim, the ALJ has essentially rejected every medical opinion. Instead, relying upon [his] subjective evaluation of [Plaintiff's] treatment records, the ALJ crafted an RFC that is unhinged to any medical opinion and contradicts all of the medical opinions in the administrative record. The ALJ has also rejected a treating source consensus from three different medical sources[, including one] who had cared for [Plaintiff] over a span of years and had found [Plaintiff's mental] impairments to be disabling. In [this Court's] view, the ALJ's justification for this course of action . . . is insufficient to justify discounting all of the medical opinions in this case. Therefore, [this Court] will remand for a more fulsome consideration of this medical opinion evidence.

*Id.* at *8.

## V.      CONCLUSION

For the foregoing reasons, the Court **VACATES** and **REMANDS** the decision of the Commissioner. An appropriate Order accompanies this Opinion.

Dated: October 17, 2022                                                   Evelyn Padin, U.S.D.J.

14